**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **THIRD COAST INSURANCE COMPANY,** | ) | |
| *Plaintiff,* | ) | |
| v. | ) | No. |
| **GOAT CONSTRUCTION INC., CITY OF CHICAGO, THE ANDREWS FAMILY 2009 TRUST,** and **JANNE COTRONEO,** | ) | |
| *Defendants.* | ) | |

---

**COMPLAINT FOR DECLARATORY JUDGMENT**

---

Plaintiff, **THIRD COAST INSURANCE COMPANY** ("**Plaintiff**" or "**Third Coast**"), by and through its attorneys, Michael J. Duffy and Jacob C. Beaupre of Wilson Elser Moskowitz Edelman & Dicker LLP, states as follows for its Complaint for Declaratory Judgment against Defendants.

**<u>STATEMENT OF CASE</u>**

1. This action seeks a declaration that Third Coast owes no insurance coverage obligations under Third Coast policy number GLSISTC003553523 to GOAT CONSTRUCTION INC. ("**Goat**") and the City of Chicago ("**Chicago**") for claims made against them in the underlying lawsuit filed by underlying plaintiff JANNE COTRONEO ("**Cotroneo**" or "**Underlying Plaintiff**") in the Circuit Court of Cook County, Illinois, County Department, Law

Division, styled *Janne Cotroneo v. Goat Construction Inc., et al.*, Case No. 2025 L 000038 ("**Underlying Lawsuit**").

## THE PARTIES

2. Third Coast is an insurance company formed under the laws of the State of Wisconsin with its principal place of business in Wisconsin.

3. Defendant Goat is a dissolved corporation formed under the laws of the State of Illinois with its principal place of business in Chicago, Illinois.

4. Defendant Chicago is an Illinois municipal corporation and a home rule unit of local government under Article VII, Section 6(a) of the Illinois Constitution.

5. Defendant The Andrews Family 2009 Trust (the "**Andrews Family Trust**") is named herein as a nominal interested party defendant and, upon information and belief, is a family trust domiciled in, and a citizen of, the State of Illinois.

6. Defendant Cotroneo is named herein as a nominal interested party defendant. Upon information and belief, Defendant Cotroneo is a citizen of the State of Florida.

## JURISDICTION AND VENUE

7. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because this is a civil action founded on diversity of citizenship including Defendants, who do business or reside within this District, and because this case involves coverage under an insurance policy issued in this District and/or liability insurance claims for a lawsuit pending within the geographical boundaries

of this District arising from events that allegedly took place within the geographical boundaries of this District.

## FACTS

9. Underlying Plaintiff filed her Third Amended Complaint at Law in the Underlying Lawsuit on December 29, 2025 (the "**Amended Complaint**").

10. A true and accurate copy of the Amended Complaint in the Underlying Lawsuit is attached hereto as **Exhibit A**.

11. The Underlying Plaintiff alleges that on February 9, 2024, she tripped and fell over a fixed object protruding from the surface of the entrance at 1330 West Madison Street in Chicago, Illinois.

12. On June 28, 2018, Goat entered into a "Contractor Agreement" with the Andrews Family Trust (the "**Contractor Agreement**").

13. A true and accurate part of the Contractor Agreement is attached hereto as **Exhibit B**.

14. Upon information and belief, Goat did not enter into a written contract with Chicago for its work.

15. Upon information and belief, Goat broke up the existing sidewalk and poured the concrete for the replacement sidewalk at 1330 West Madison Street prior to the Underlying Plaintiff's February 9, 2024 accident.

16. Upon information and belief, Goat's work with respect to the sidewalk was put to its intended use as a pedestrian walkway two to three days before the Underlying Plaintiff's February 9, 2024 accident.

17. Upon receipt of the Underlying Lawsuit, on February 26, 2026, Third Coast retained defense counsel to defend Goat.

18. Despite retained defense counsel's numerous attempts to contact Goat, retained defense counsel has been unable to secure required assistance in the defense of the Underlying Lawsuit.

19. On June 9, 2026, Chicago sent correspondence to Goat tendering its defense and indemnity of the Underlying Lawsuit to Third Coast.

20. A true and accurate copy of the tender correspondence dated June 9, 2026 is attached hereto as **Exhibit C**.

21. On October 15, 2026, Third Coast issued correspondence to Chicago disclaiming coverage for its tender of defense and indemnity to Goat for the Underlying Lawsuit.

22. A true and accurate copy of the disclaimer correspondence is attached hereto as **Exhibit D**.

23. On October 15, 2026, Third Coast issued reservation of rights correspondence to Goat reserving its right to deny coverage and withdraw retained defense counsel if Goat did not immediately engage and assist in the defense and investigation of the Underlying Lawsuit.

24. A true and accurate copy of the reservation of rights correspondence dated October 15, 2026 is attached hereto as **Exhibit E**.

25. Retained defense counsel has been unable to effectively engage Goat despite hiring an investigator who has made numerous attempts to reach a representative of Goat.

26. On December 22, 2025, the Andrews Family Trust filed its Third-Party Complaint (the "**Third-Party Complaint**") against Goat.

27. A true and accurate copy of the Third-Party Complaint is attached hereto as **Exhibit F**.

28. On October 19, 2026, Chicago filed its First Amended Counterclaims (the "**Counterclaim**") against Goat and the Andrews Family Trust.

29. A true and accurate copy of the Counterclaim is attached hereto as **Exhibit G**.

**THIRD COAST'S POLICY**

30. Third Coast issued a Commercial General Liability Policy bearing policy no. GLSISTC003553523 to the named insured Goat for the policy period of February 12, 2023 to February 12, 2024 (the "**Policy**").

31. A true and accurate copy of the Policy is attached hereto as **Exhibit H**.

32. Subject to its terms, the Policy provides limits of $1 million per occurrence and $2 million in the general aggregate.

33. Subject to all its terms, the Policy provides as follows:

***MANUSCRIPT COMMERCIAL GENERAL LIABILITY COVERAGE FORM***

***

> *Throughout this policy, the words "you", "your" or "Named Insured" refer to the Named Insured shown in the declarations. The words "we", "us", and "our" refer to the Company providing this insurance. The term "insured" means any individual or entity that qualifies as an "insured" under the terms of this policy and any endorsements made a part of this policy.*

***

> ***SECTION I – COVERAGES***
>
> ***COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY***
>
> *1.* ***Insuring Agreement***
>
> *a. We will pay those sums that the insured becomes legally obligated to pay as "damages" for "bodily injury" or "property*

*damage" to which this insurance applies. We will have the right and duty to defend you, the Named Insured, against any "suit" seeking "damages" to which this insurance applies, and which is timely reported to us as provided hereunder. Except as otherwise provided in this policy, we have no duty to defend any other insured. Our duty to defend you is further limited as provided below and in the exclusions made part of this policy. We will have no duty to defend any insured against any suit seeking damages for bodily injury or property damage to which this insurance does not apply and/or which is not timely reported to us. We may at our discretion investigate any occurrence and settle any claim or suit that may result. But:*

1) *The amount we will pay for "damages" is limited as described in Section IV – Limits of Liability;*

2) *Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of "damages" medical expenses, and/or "claim expenses" under Coverage A, B and/or C.*

3) *It is expressly understood and agreed that "claim expenses" (including defense expense) are included within, and are not in addition to, the Limits of Liability set forth in the Declarations;*

4) *As noted in 1(a) above, we have no duty to defend any insured other than the Named Insured. However, we shall have no duty or obligation to defend the Named Insured in connection with any "claim" or "suit" where any other insurer is obligated to defend the insured, and we shall have no duty to contribute to or participate in the defense provided by any other such insurer. We shall have the right but not the obligation to defend any insured in connection with any "claim" or "suit" under these circumstances and/or where the insured has any other insurance under which, but for the existence of this Policy, any other insurer is obligated to provide a defense; and*

5) *Notwithstanding the law pursuant to which this policy shall be construed, we may look to and consider extrinsic evidence outside of the allegations and/or facts pleaded by any claimant to determine whether we owe a duty to defend or indemnify against any "claim" or "suit". We may, at our discretion, investigate any*

*"occurrence" and settle any "claim" or "suit" that may result.*

***

*See* **Ex. H**, pp. 27-28.

34. The Policy contains the following conditions, in relevant part:

***V. COMMERCIAL GENERAL LIABILITY CONDITIONS***

***

***2. Duties in the Event of Occurrence, Claim, or Suit***

***

***c.*** *You and any other involved insured must:*

***(1)*** *immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";*

***(2)*** *authorize us to obtain records and other information;*

***(3)*** *cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and*

***(4)*** *assist us, upon our request, in the enforcement of any right against any person or organization, including any other insurance carrier, surety, or bonding company, which may be liable to the insured because of injury or damage to which this insurance may also apply.*

***

***13. Assistance and Cooperation of the Insured***

*The insured shall cooperate with the Company and, upon the Company's request, shall submit to examination(s) and interrogation by a representative of the Company under oath if requested, as frequently as may reasonably be required, outside the presence of any other insured, and shall sign the transcript of any of such examination(s) or interrogation, and shall attend hearings, depositions and trials, and shall assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses, and in the conduct of "suits", as well as in the giving of a written statement or statements to the Company's representatives and meeting*

*with such representatives for the purpose of investigation and/or defense, all without charge to the Company. The insured shall further cooperate with the Company and do whatever is necessary to secure and effect any rights of indemnity, contribution, or apportionment, which the insured or we may have. The insured shall promptly provide to us all documents, materials, and information reasonably requested by us in connection with any of the foregoing, and in connection with any prior losses, business activities, profits, liabilities, assets, claims, demands, suits, and related matters.*

***

*See* **Ex. H**, pp. 31, 34.

35. The Policy contains the following definitions, in part:

***VI. DEFINITIONS***

***

***5.*** *"Bodily injury" means physical injury, sickness, disease or death sustained by a person that first happens or begins during the policy period. "Bodily injury" does not include mental anguish, emotional distress or emotional damages or injury(ies) of any kind.*

***

***14.*** *"Insured Contract" means:*

***

***f.*** *That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization caused by your negligence. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.*

***g.*** *An "Insured Contract" does not include that part of any contract or agreement:*

***

***(4)*** *Under which any insured agrees to indemnify, defend, share or contribute to damages with another party for claims or "suits" for "bodily injury" or*

*"property damage" directly or indirectly arising out of, caused by, resulting from or in any way related to the indemnified party's actual or alleged negligence, actions, inactions or status on any basis (including but not limited to vicarious liability, derivative liability, or strict liability) except for liability arising from the sole negligence of the Named Insured;*

***

**19.** *"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. "Occurrence" as used herein refers to the earliest act, omission, or creation of conditions or circumstances that give rise to any "property damage", "bodily injury" or "personal or advertising injury".*

***

**23.** *"Products-completed operations hazard":*

***a.*** *Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:*

***(1)*** *products that are still in your physical possession; or*

***(2)*** *work that has not yet been completed or abandoned.*

*However, "your work" will be deemed completed at the earliest of the following times:*

***(i)*** *When all of the work called for in your contract has been completed;*

***(ii)*** *When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site;*

***(iii)*** *When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.*

*Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.*

***b.*** *Does not include "bodily injury" or "property damage" arising out of:*

***(1)*** *The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;*

***(2)*** *The existence of tools, uninstalled equipment or abandoned or unused materials; or*

***(3)*** *Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.*

***

***29.*** *"Your work":*

***a.*** *Means:*

***(1)*** *Work or operations performed by you or on your behalf; and*

***(2)*** *Materials, parts or equipment furnished in connection with such work or operations.*

***b.*** *Includes:*

***(1)*** *Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and*

***(2)*** *The providing of or failure to provide warnings or instructions.*

***

*See* **Ex. H**, pp. 36-40.

36. The Policy contains the following relevant endorsement, which states, in part:

***ADDITIONAL INSURED-OWNERS, LESSEES OR CONTRACTORS –***

***SCHEDULED PERSON OR ORGANIZATION INCLUDING PRIMARY COVERAGE***

*This endorsement modifies insurance provided under the following:*

***COMMERCIAL GENERAL LIABILITY COVERAGE PART.***

| |
|---|
| ***Name of Additional Insured:***<br><br>***As required by a legally enforceable written agreement entered into prior to commencement of the Named Insured's work.***<br><br>***Designated Project/Location to which this endorsement applies:***<br>***All Projects and Locations*** |

*(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)*

**A.** ***Section III – Who Is An Insured*** *is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:*

1. *Your acts or omissions; or*

2. *The acts or omissions of those acting on your behalf;*

*In the performance of your ongoing operations performed during the policy period for the additional insured(s) at the location(s) designated above.*

**B.** *This insurance does not apply to "bodily injury" or "property damage" that takes place after, and the Additional Insured's status as an additional insured terminates, upon the earlier of when:*

1. *All work, including materials, parts or equipment furnished by the Named Insured in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or*

2. *That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor engaged in performing operations for a principal as part of the same project.*

**C.** *If expressly required by a written and legally enforceable contract entered into by the Named Insured prior to commencement of work by the Named Insured for the Additional Insured, the insurance afforded by the policy to the Additional Insured(s) listed in the Schedule for the described location(s) is primary insurance. Any other insurance or self-insurance maintained directly by the Additional Insured(s) is excess of this insurance and shall not contribute to it.*

*Coverage for any additional insured is governed by the terms, conditions, and exclusions of this policy and all endorsements, including the Insuring Agreement.*

*The coverage provided for any additional insured is only to the extent of and in the proportion the additional Insured is held liable for the negligence or strict liability/conduct/acts of the Named Insured. No coverage is provided for liability based upon the acts, errors or omissions of the Additional Insured.*

*Except as set forth above, all of the terms, conditions and exclusions of this policy apply and remain in effect.*

* * *

*See* **Ex. H**, p. 50.

**<u>COUNT I</u>**
**(Breach of Cooperation Condition – Goat)**

37. Plaintiff incorporates and restates the allegations of Paragraphs 1 through 36 above as if fully set forth herein.

38. The Policy, pursuant to **Condition V.2.c** – Duties in the Event of Occurrence, Claim, or Suit, requires the insured to "cooperate with us in the investigation or settlement of the 'claim' or defense against the 'suit.'" *See* **Ex. H**, p. 31.

39. The Policy, pursuant to **Condition V.13** – Assistance and Cooperation of the Insured, further requires that the insured "cooperate with [Third Coast] . . . attend hearings, depositions and trials, and shall assist in . . . securing and giving evidence . . . and in the conduct of 'suits,'" and "shall promptly provide to us all documents, materials, and information reasonably requested by [Third Coast]." *See* **Ex. H**, p. 34.

40. Goat has breached the Policy's cooperation conditions. Despite retained defense counsel's multiple attempts to contact and obtain required information from Goat, Goat has failed to communicate with retained defense counsel or to assist in answering written discovery in the Underlying Lawsuit.

41. Third Coast exercised reasonable diligence to secure Goat's cooperation, and Goat's failure to cooperate is knowing and willful.

42. Third Coast has been substantially prejudiced by Goat's breach of the cooperation conditions. Goat has been unable to answer written discovery.

43. Goat's lack of cooperation has also deprived Third Coast of the ability to defend Goat's alleged liability in the case and of the ability to pursue contribution or indemnity from others.

44. Goat's breach of the cooperation conditions, and the resulting prejudice to Third Coast, forfeits any coverage otherwise available under the Policy.

**WHEREFORE**, Plaintiff Third Coast respectfully requests that the Court enter the following relief:

A. A declaration finding that Third Coast owes no duty to defend or indemnify Goat under the Policy in connection with the Underlying Lawsuit; and

B. For all such just and equitable relief, including costs of this suit.

**COUNT II**
**(Contractual Liability Exclusion – Chicago)**

45. Plaintiff incorporates and restates the allegations of Paragraphs 1 through 36 above as if fully set forth herein.

46. The Policy, pursuant to **Section II, Common Policy Exclusion a.** – Breach of Contract/Contractual Liability, provides that the insurance does not apply to "'[b]odily injury' . . . arising, directly or indirectly, out of the actual or alleged breach of any contract or agreement or for which any insured is obligated to pay 'damages' (including attorneys' fees and costs) by reason of the assumption of liability in a contract or agreement." *See* **Ex. H**, p. 21.

47. Chicago has sought indemnity in the Underlying Lawsuit from Goat, claiming that the Municipal Code of Chicago, the Chicago Department of Transportation's ("CDOT") Rules and Regulations for Construction in the Public Way, licensing agreements, CDOT permits, and/or Illinois law required Goat to indemnify Chicago. **Ex. C**.

48. To the extent Chicago claims indemnity from Goat, **Common Policy Exclusion a. – Breach of Contract/Contractual Liability** bars coverage for such claims against Goat.

**WHEREFORE**, Plaintiff Third Coast respectfully requests that the Court enter the following relief:

A. A declaration finding that Third Coast owes no duty to defend or indemnify Goat as respects Chicago's claim for indemnity in connection with the Underlying Lawsuit; and

B. For all such just and equitable relief, including costs of this suit.

**<u>COUNT III</u>**
**(Chicago Does Not Qualify as an Additional Insured)**

49. Plaintiff incorporates and restates the allegations of Paragraphs 1 through 36 above as if fully set forth herein.

50. The Additional Insured – Owners, Lessees or Contractors endorsement extends additional insured status only to a person or organization "required by a legally enforceable written agreement entered into prior to commencement of the Named Insured's work." *See* **Ex. H**, p. 50.

51. There is no written agreement between Goat and Chicago requiring that Chicago be added as an additional insured. The only written agreement for the sidewalk work is the Contractor Agreement between Goat and the Andrews Family Trust, to which Chicago is not a party. **Ex. B**.

52. Even if Chicago qualified as an additional insured, the endorsement covers only liability caused by Goat's acts or omissions "[i]n the performance of your ongoing operations," and provides that the insurance does not apply to "bodily injury" that takes place after, and additional insured status terminates upon, completion of the work on the project or the putting of that portion of "your work" to its intended use. *See* **Ex. H**, p. 50.

53. Upon information and belief, Goat's work with respect to the sidewalk was put to its intended use as a pedestrian walkway two to three days before the Underlying Plaintiff's February 9, 2024 accident. ¶ 16, *supra*.

54. The endorsement further provides that coverage for any additional insured is "only to the extent of and in the proportion the additional Insured is held liable for the negligence or strict liability/conduct/acts of the Named Insured" and that "[n]o coverage is provided for liability based upon the acts, errors or omissions of the Additional Insured." *See* **Ex. H**, p. 50.

55. The Underlying Plaintiff's claim against Chicago is based on Chicago's own alleged negligence in the ownership, control, inspection, and maintenance of the sidewalk. **Ex. A**, Count II.

56. In addition, the Policy provides that Third Coast has "no duty to defend any insured other than the Named Insured." *See* **Ex. H**, p. 11.

57. The certificates of insurance on which Chicago relies do not confer additional insured status under the Policy. **Ex. C**.

58. Therefore, Chicago does not qualify as an additional insured under the Policy, and Third Coast owes no duty to defend or indemnify Chicago in connection with the Underlying Lawsuit.

**WHEREFORE**, Plaintiff Third Coast respectfully requests that the Court enter the following relief:

A. A declaration finding that Chicago does not qualify as an additional insured under the Policy and that Third Coast owes no duty to defend or indemnify Chicago in connection with the Underlying Lawsuit; and

B. For all such just and equitable relief, including costs of this suit.

Respectfully submitted,

Wilson Elser Moskowitz Edelman & Dicker LLP

*/s/ Michael J. Duffy*

Michael J. Duffy – 619666
Jacob C. Beaupre
Wilson Elser Moskowitz Edelman & Dicker LLP
161 North Clark Street, Suite 4500
Chicago, IL 60601
(312) 704-0550 (Main)
michael.duffy@wilsonelser.com
jacob.beaupre@wilsonelser.com